### ROWLEY.

The overturning of the ballot-box, and thereby breaking up a balloting which had commenced, under a belief on the part of the selectmen, that a person had voted twice, is an irregularity; but if done without any fraudulent purpose, and especially if it receives the tacit assent of the electors, and is further acquiesced in by a vote not to dissolve the meeting, it is not sufficient to invalidate an election subsequently effected.

Where a meeting for the choice of representatives, which was fully attended, refused at a late hour to dissolve, but proceeded to ballot again, and the selectmen, after the lapse of from twenty to thirty minutes, closed the poll, just before the sun was set, it was held, that the conduct of the selectmen, in thus closing the poll, furnished no evidence of an intention on their part to prevent electors from voting.

THE election of Luther Moody, returned a member from this town, was controverted by Benjamin H. Smith, and sixty others, on the following grounds, stated by them in their petition:—

"The facts are these:— No choice of representative was made in said Rowley until the fourth Monday of November, and then in this wise. The meeting was opened at 9 A. M. One balloting was had before dinner, which resulted in no choice; the highest candidates having as many votes as the

[1] 65 J. H. 373, 374.

said Moody had when he was elected, and still wanting many votes of an election. The meeting was adjourned to the afternoon; and on the first balloting after dinner, when the votes were nearly or quite all in, and the poll had been opened from one to two hours, it was said by the selectmen that one man had put in two votes; whereupon, without closing the poll or counting the votes, the selectmen emptied the ballot-box upon the floor of the house, and proceeded to ballot again. If any choice had been effected at that ballot, Moody was not elected, as he was not a candidate at that time. Many of the voters had left the house, and did not cast their votes on the last ballot. And furthermore, the poll on the last balloting was kept open only fifteen or twenty minutes, to the extent, being closed by the chairman of the selectmen before sunset, and in the face of numerous objectors and voters, who were within the house, and hurrying to the box, and who would have turned the scale if they had been allowed to vote. In addition to this, it is believed that many names were not checked before the votes were deposited."

The committee on elections, to whom the case was referred, reported a statement of the evidence, from which it appeared, that the allegations in the petition were substantiated on the hearing. It also appeared, that after the ballot-box had been emptied by the selectmen, which was done without any fraudulent purpose on their part, the selectmen forthwith proceeded, without objection, to another balloting; that immediately previous to the last balloting, at which Moody was elected, the electors refused to dissolve the meeting; and that when the balloting had lasted from twenty to thirty minutes, the chairman of the selectmen gave notice, that if no person in the house wished to vote, he should close the poll; and, no one coming forward to vote, he closed the poll at once, just as the sun was nearly out of sight.

The committee concluded their report as follows:—

" The warrant for the meeting contained no notice how long the poll was to be kept open.

The record of the meeting shows, that on the first ballot

58

the whole number of votes was 156; Thomas E. Payson 67; Daniel N. Prime 66; scattering 23. On the second ballot, whole number 142; Thomas E. Payson 60; Daniel N. Prime 41; Luther Moody 28; and scattering 13. On the third ballot, whole number 138; Thomas E. Payson 52; Luther Moody 65; and scattering 13. On the fourth ballot, whole number 132; Luther Moody 69; Thomas E. Payson 42; and scattering 21.

The committee, in view of all the facts of the case, were of opinion, that the overturning of the ballot-box by the selectmen, under an impression and belief that a person had voted twice, was an irregularity; but that as it was done without a fraudulent intent, received the tacit assent of the town present, and was further acquiesced in by the town's subsequent vote, refusing to dissolve, and was followed by a ballot but little diminished in numbers, they did not think it should vitiate the election and deprive the town of its representation.

The committee were further of opinion, that the poll might possibly have been kept open longer, and possibly votes might have been received, which would have varied the result. Yet the town at a late hour had by vote refused to dissolve, showing thereby a strong desire to be represented. It was the duty of the selectmen, as far as possible, to prevent that wish from being thwarted by any breach of the (commonly called) sunset law. The committee were by no means led to believe, that there was any intention on the part of the selectmen to prevent citizens from voting; all those, who it is represented were late, and were excluded, had been at the meeting in the course of the day, and went away, relying upon their own calculations of a seasonable return, or perhaps with no intention of returning unless sent for.

In a ballot which had but six less votes than the immediately preceding trial, the committee think they can see no cause for a belief, that it was an illegal expression of the public voice, and therefore recommend that the petitioners have leave to withdraw."

This report was agreed to.[1]

[1] 65 J. H. 102, 136, 170, 171, 275.